WILLIAM ARMSTEAD OATES, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Oates v. Commissioner
Docket No. 8808-74.
United States Tax Court
T.C. Memo 1976-347; 1976 Tax Ct. Memo LEXIS 57; 35 T.C.M. (CCH) 1589; T.C.M. (RIA) 760347; November 15, 1976, Filed William Armstead Oates, pro se. William Robert Pope, Jr., for the respondent. FEATHERSTON
MEMORANDUM FINDINGS OF FACT AND OPINION FEATHERSTON, Judge: Respondent determined a deficiency of $309.42 in petitioner's Federal income tax for 1971. Other issues having been settled, the only issue for decision is whether, during 1971, petitioner provided over one-half of his mother's total support, within the meaning of section 152. [1]/ FINDINGS OF FACT At the time his petition was filed, petitioner was a legal resident of Lobelville, Tennessee. He filed his Federal income tax return for 1971 with the Internal *58 Revenue Service Center, Memphis, Tennessee. Petitioner's father died in 1924, long prior to the enactment of the Social Security Act. His mother never had any earnings from employment and, as a result, was not eligible for any Social Security benefits. While she might have qualified for Part B Medicare payments, the records of the Social Security Administration indicate she never received any benefits under that program. She died on October 2, 1972 at the age of 89 or 90. Petitioner contributed to the support of his mother for over 40 years. After his younger sister became unable to work in about 1960, he was the sole, nongovernmental source of support of his mother and, after 1969, also of his sister. During 1971, petitioner served as the minister of a church in Charlotte, Tennessee. In September 1970, petitioner's mother entered the Care Inn Nursing Home (hereinafter the nursing home) in Collierville, Tennessee, where she remained until May 31, 1971. During this period petitioner made several trips to the nursing home to look after his mother, buy her medicine, pay her bills, and otherwise meet her needs. For the remainder of 1971, she lived in a house in Williston, *59 Tennessee. During this period, petitioner's mother was bedridden and his sister, who moved to the house from the nursing home at the same time, was an invalid. Initially, petitioner employed and paid a lady to care for his mother and his sister, but the lady stayed only about a month. Thereafter, petitioner and one or more of his cousins took turns caring for his mother and sister, shopping for groceries, cooking, cleaning, buying medicine, and otherwise providing needed attention. Between June 1, 1971, and December 31, 1971, he made 14 trips from his home to the house in which his mother lived (336 miles round trip), spending several days on each trip, in order to care for her. He also made other trips during this period, as well as during the first 5 months of the year, for the same purpose. During her stay at the nursing home, petitioner's mother received $7 a day, which was forwarded directly to the nursing home, from the State of Tennessee Department of Human Services. She also received $16 per month that was paid directly to her by the same agency. After she returned to the house in Williston, Tennessee, she received five assistance checks of $108 each and Medicaid *60 payments of $115.64. In summary, the amounts received from the State of Tennessee for petitioner's mother's support during 1971 were as follows: Payments to nursing home--151 days
(Jan. 1--May 31) at $7 a day
$1,057.00
Payments to petitioner's mother while
in nursing home-- $16 a month for 5
months
80.00
Payments to petitioner's mother after
she left the nursing home--5 payments
of $108 each
540.00
Medicaid payments
115.64
Total
$1,792.64
The amounts expended by petitioner during 1971 for the support of his mother and sister included the following: One-Half A. List of Checks
Total for Mother
1. Payments to nursing
home
$1,650.00
$ 825.00
2.Medical expenses
(a) Not designated
341.66
170.83
(b) Specifically
designated for
mother
55.00
3. Food, sundries, and
upkeep of home
555.71
277.85
B. Other Expenses
1. Electric bill at
residence
83.14
41.57
2. Medical bills paid
in cash
200.00
100.00
3. Travel expenses
267.12
133.56
Total
$1,603.81
In addition to the trips for which the above travel expenses were incurred, petitioner made several other trips from his home to the nursing home to *61 care for his mother, pay her bills, buy drugs, and the like. On at least one occasion his mother was hospitalized in the Baptist Hospital in Memphis, and petitioner went to Memphis and stayed with her at the hospital. In his income tax return for 1971, petitioner claimed a dependency exemption deduction for his mother and a deduction for medical expenses he incurred on her behalf. Respondent disallowed these deductions on the ground that petitioner did not provide more than one-half of his mother's total support for 1971. OPINION Respondent is, of course, correct in his position that section 152(a) defines a "dependent" as an individual who bears a specified relationship (e.g., that of a mother) to the taxpayer and "over half of whose support" for the specified period was provided by the taxpayer. Respondent compares the amount shown in the foregoing table as provided by petitioner ($1,603.81) with the amount provided by the State of Tennessee ($1,792.64) and asks us to find that petitioner did not provide over half of his mother's support in 1971. We decline to do so. We are persuaded that petitioner provided over half of his mother's support in 1971. Petitioner testified *62 that, during the period June 1, 1971, to December 31, 1971, he traveled from his home in Charlotte, Tennessee, to Williston, Tennessee (a distance of 336 miles round trip), on 14 occasions to care for his mother and spent several days on each trip. But his testimony was clear that he made other similar trips which he did not include in his mileage computations. Moreover, he limited his expense claims in this respect to 6 cents per mile, making no claim for the cost of meals and other incidental expenses which were almost certainly incurred. On one occasion, for example, he transported his mother to the hospital and spent several days at her bedside. On another occasion, his mother fell, injuring herself, and he traveled to Williston to care for her.The mileage computations do not include any expense of these and other trips. Nor do the mileage computations reflect any expenditures for transportation costs incurred in buying items from the druggists and grocers, or in paying bills. Respondent's computations limit the amounts of petitioner's expenditures that are documented by checks covering electric, telephone, heating, grocery, and drug bills. The expenses of caring for an aged *63 and infirm person, as was petitioner's mother in 1971, in the circumstances described in his testimony cannot be so neatly categorized or fully documented. We are convinced that petitioner is correct in his position that his expenditures for his mother's support exceeded the amounts she received from the Tennessee Department of Human Services. To reflect the disposition of other issues, Decision will be entered under Rule 155. Footnotes
1. /↩ All section references are to the Internal Revenue Code of 1954, as in effect during the tax year in issue.